**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: H&R BLOCK REFUND ANTICIPATION LOAN LITIGATION | ) ) ) | MDL No. 2373 |
| This Document Relates to: All Cases | ) ) ) ) ) | Case No. 12 CV 2973 |
| | | Judge Joan B. Gottschall |

**MEMORANDUM OPINION & ORDER**

This case concerns H&R Block's practice of offering "refund anticipation loans" to its customers. The plaintiffs allege that H&R Block's practice violates various state laws by failing to adequately disclose loan fees, charging unreasonably high interest rates, and deceiving customers about the loans. H&R block moves to compel arbitration and stay further proceedings until arbitration has been completed. For the reasons explained below, the motion is granted.

### I. BACKGROUND

Refund anticipation loans allow tax filers to receive their refund sooner than if they waited for a mailed check from the IRS. The plaintiffs allege that these loans "include exorbitant finance charges that, when properly calculated in accordance with the Truth in Lending Act ('TILA') and relevant state laws, often exceed 100% APR." (Compl. ¶ 23, ECF No. 18.) They allege that the loans "provide little to no value to consumers at predatory interest rates and fees, often in conjunction with exorbitant tax preparation fees for straightforward tax filings." (Compl. ¶ 24.)

Each of the seventeen plaintiffs in this case originally sued H&R Block in his or her home state. After the Judicial Panel on Multidistrict Litigation consolidated the cases before this court, the plaintiffs filed a thirty-one count consolidated amended complaint. They sue on behalf

of themselves, nine state-specific classes, and a multistate class. The named defendants in this case are HRB Tax Group, Inc.; H&R Block Services, Inc.; H&R Block Eastern Enterprises, Inc.; and H&R Block Enterprises, Inc. The court refers to these defendants collectively as "H&R Block."

The claims applicable to all of the proposed classes fall into three general categories. First, the plaintiffs bring claims under various state statutes requiring tax preparers such as H&R Block to disclose certain information about the fees associated with refund anticipation loans. Second, the plaintiffs allege that H&R Block violated state usury laws because the annual percentage rate charged for the loans exceeded the statutory limit. Third, the plaintiffs contend that H&R Block violated state consumer-protection laws by (1) violating state statutes concerning refund anticipation loans; (2) violating the Truth in Lending Act, 15 U.S.C. §§ 1601-1667f.; and (3) deceiving customers about the nature of the loans.

Although the complaint alleges that H&R Block "facilitated" the transaction between the customer and a bank, H&R Block itself did not issue any loans. The loans were issued by H&R Block Bank (HRBB); HSBC Bank USA, N.A. (HSBC); and HSBC Trust Company (Delaware), N.A. (HSBCT). When customers applied for a loan at one of these banks, they were required to sign a loan agreement. Although there are minor differences among the three banks' loan agreements, those differences are not relevant for present purposes.

The 2012 HRBB loan agreement contains an arbitration clause that is similar to the arbitration clauses found in the other loan agreements. The first sentence of that arbitration clause states:

> IF YOU APPLY FOR A RAC [*i.e.*, a refund anticipation loan] IN A STATE THAT PROHIBITS ARBITRATION OR CLASS ACTION WAIVERS FOR CLAIMS RELATED TO A RAC OR THE TRANSACTION TO APPLY FOR

OR OBTAIN A RAC, THIS SECTION ELEVEN (11) SHALL NOT APPLY TO THOSE CLAIMS.

(Crew Decl. Ex. A (Loan Agreement) § 11, ECF No. 23-1.) The arbitration clause goes on to state:

> Any claim, dispute, or controversy between me and HRBB (as specifically defined below for purposes of this Arbitration Provision), whether in contract or tort (intentional or otherwise), whether pre-existing, present or future, and including constitutional, statutory, common law, regulatory, and equitable claims arising out of or in any way relating to (a) any of the Documents or any other documents or product that I have previously received from HRBB . . . ; and (d) except as provided below, the validity, enforceability or scope of this Arbitration Provision or any part thereof, including, but not limited to, the issue of whether any particular claim, dispute or controversy must be submitted to arbitration (collectively, the "Claim"), shall be resolved, upon the election of either me or HRBB, by binding arbitration pursuant to this Arbitration Provision and the applicable rules of the American Arbitration Association ("AAA") (the "Administrator") in effect at the time the Claim is filed.

(*Id.*) The arbitration clause defines "HRBB" as "H&R Block Bank, a federal savings bank, and HRB Tax Group, Inc., and each of their parents, subsidiaries, affiliates, and predecessors, successors, assigns and the franchisees of any of them, and each of their officers, directors, agents, and employees." (*Id.*)

Finally, the arbitration clause includes a class-action waiver, which states: "No class actions or private attorney general actions in court or in arbitration or joinder or consolidation of claims in court or in arbitration with other persons are permitted without the consent of HRBB and me." (*Id.*)

## II. LEGAL STANDARD

The Supreme Court has stated that the "principal purpose" of the Federal Arbitration Act (FAA) is "to ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. __, 131 S. Ct. 1740, 1748 (2011). As the Court explained in *Concepcion*:

> This purpose is readily apparent from the FAA's text. Section 2 makes arbitration agreements "valid, irrevocable, and enforceable" as written . . . ; § 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims "in accordance with the terms of the agreement"; and § 4 requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement . . . .

*Id.* at 1748. In light of these provisions, the Court has held that "parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit with whom a party will arbitrate its disputes . . . ." *Id.* at 1748-49 (internal citations omitted).

The Court has stated that § 2 of the FAA reflects a "liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Thus, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitrations." *Id.* "Notwithstanding this strong federal policy, however, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)), *abrogated on other grounds by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009). "As a general rule, therefore, 'the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.'" *MS Dealer*, 177 F.3d at 947 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

### III. ANALYSIS

The plaintiffs argue that the arbitration clause does not apply to their claims because they reside in states that prohibit class-action waivers in consumer arbitration agreements.

In *Concepcion*, the Supreme Court held that § 2 of the FAA prohibits states from conditioning the enforceability of arbitration agreements on the availability of classwide arbitration procedures. 131 S. Ct. at 1744. Specifically, the Court held that California's

4

"*Discover Bank*" rule, which stated that class-action waivers in consumer arbitration agreements were unconscionable, was preempted by the FAA and therefore invalid. *Id.* at 1753. The Court reasoned that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.* at 1748.

The plaintiffs argue that *Concepcion* is irrelevant because it was issued after the plaintiffs signed the loan agreements. "Therefore," the plaintiffs argue, "at the time the RAL Applications were signed, each of the relevant states prohibited the enforcement of the RAL Application." (Pls.' Br. 13, ECF No. 52.)

The Ninth Circuit addressed the plaintiffs' argument in *Murphy v. DirecTV, Inc.*, 724 F.3d 1218 (9th Cir. 2013). There, the plaintiffs signed arbitration clauses that stated: "If . . . the law of your state would find this agreement to dispense with class arbitration procedures unenforceable, then this entire [arbitration clause] is unenforceable." *Id.* at 1224. The plaintiffs argued that because the law of their states "would have found" the agreement to be unenforceable at the time the agreements became effective, the arbitration clause was unenforceable. *Id.* at 1225.

The Ninth Circuit rejected the plaintiffs' argument, noting that it "misapprehends the doctrine of preemption and the rationale of the Supreme Court's ruling in *Concepcion*." *Id.* The court held that *Concepcion* applied retroactively to the arbitration provision and that, therefore, the arbitration provision was enforceable. *Id.* In reaching this conclusion, the court drew on two principles of judicial construction articulated by the Supreme Court.

The first principle is that "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313 (1994); *see also Morales-*

5

*Izquierdo v. DHS*, 600 F.3d 1076, 1090 (9th Cir. 2010) ("[W]hen a court interprets a statute, even an ambiguous one, and even that interpretation conflicts with the court's own prior interpretation, the new interpretation is treated as the statute's one-and-only meaning."). Applying this principle to the *Concepcion* court's construction of the FAA, the Ninth Circuit held that "the FAA has *always* preempted states from invalidating agreements that disallow class procedures." *Murphy*, 724 F.3d at 1226. "[T]he FAA meant what the Court in *Concepcion* says it means—that the Customer Agreement's class waiver is enforceable—even prior to 2011 when the *Discover Bank* rule was nominally in effect." *Id.* at 1225.

The second principle is that "the Constitution, laws, and treaties of the United States are as much a part of the law of every State as its own local laws and Constitution." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 157 (1982) (internal quotation marks omitted). When the Supreme Court holds that a state law is preempted, the state law is "*nullified* to the extent that it actually conflicts with federal law." *Id.* at 153 (emphasis added). Thus, the Ninth Circuit recognized that "Section 2 of the FAA, which under *Concepcion* requires the enforcement of arbitration agreements that ban class procedures, *is* the law of California and of every other state." *Murphy*, 724 F.3d at 1226. The arbitration agreement's reference to state law did not incorporate California's *Discover Bank* rule, because "the *Discover Bank* rule is not, and indeed never was, California law." *Id.* The arbitration clause was always enforceable, because "federal law require[d] its enforcement." *Id.*[1]

---

[1] It appears that only one other federal court has addressed the retroactive application of *Concepcion*. *See Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994 (N.D. Cal. 2011). The *Meyer* court arrived at the same conclusion as the *Murphy* court, holding that "[a]lthough the Supreme Court decided *Concepcion* after Plaintiff entered the 2008 Service Agreement, the Court must nonetheless apply *Concepcion* to its review of the agreement." *Id.* at 1001 ("[A]n intervening Supreme Court decision must be given full retroactive effect in all cases still open on

The plaintiffs argue that the facts of *Murphy* are "readily distinguishable." (Pls.' Resp. to Defs.' Notice of Additional Authority, ECF No. 72-1.) They contend that "[t]he crucial distinction between *Murphy* and the instant case is that, here, there was never an *agreement* to arbitrate in the first place, based upon the plain language of H&R Block's contract with its customers . . . ." (*Id.*) They base their argument on the fact that, in *Murphy*, the arbitration clause used the term "unenforceable," whereas here the arbitration clause uses the phrase "shall not apply."

The court disagrees with the plaintiffs that this is a meaningful difference. Under *Murphy*, "the FAA has *always* preempted states from invalidating agreements that disallow class procedures." 724 F.3d at 1226. This means that the states in which the plaintiffs reside never "prohibited" class-action waivers. Thus, the arbitration clause *always* "applied" to the plaintiffs' claims. The plaintiffs may disagree with the *Murphy* court's reasoning, but it is disingenuous to claim that the case is factually distinguishable. In both this case and in *Murphy*, the plaintiffs agreed to arbitrate their disputes unless state law prohibited class-action waivers.

The plaintiffs also direct the court to a recent decision from the California Court of Appeal criticizing *Murphy*. *See Imburgia v. DIRECTV, Inc.*, 170 Cal. Rptr. 3d 190 (Cal. Ct. App. 2014). *Imburgia* involved the same arbitration clause that was at issue in *Murphy*. *Id.* at 193. In analyzing that clause, the court first noted that the clause did not state that its enforceability "shall be determined under the law of your state to the extent that it is not preempted by the FAA" or that it "shall be determined under the law of your state without considering the preemptive effect, if any, of the FAA." *Id.* at 195. If the agreement had included such language, the court noted, then the clause would have been enforceable. *Id.* But the court

---

direct review and as to all events, regardless of whether such events predate or postdate . . . announcement of the rule[.]" (internal quotation marks omitted)).

found that the agreement "was not as explicit as either of those hypotheticals," and thus concluded that "[t]he question before us . . . [is] whether 'the law of your state['] . . . mean[s] 'the law of your state to the extent it is not preempted by the FAA,' or 'the law of your state without considering the preemptive effect, if any of the FAA[.]'" *Id.*

In deciding that question, the court emphasized the principle of contract interpretation that when a general and a particular provision are inconsistent, the particular provision is "paramount to the general provision." *Id.* (internal quotation marks omitted). Because the reference to the "law of your state" operated as a particular provision, the court reasoned that it was "paramount to" to the agreement's general adoption of the FAA. *Id.* The court also relied on "the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it." *Id.* at 196 (internal quotation marks omitted). Based on these principles, the court concluded that the "law of your state" language meant "the law of your state without considering the preemptive effect, if any of the FAA." *Id.* The court held that because "the class action waiver is unenforceable under California law," the arbitration clause was unenforceable. *Id.* at 198.

Recognizing that the Ninth Circuit in *Murphy* reached the opposite conclusion, the *Imburgia* court stated, "[w]e find the analysis in *Murphy* unpersuasive." *Id.* at 197. The court criticized *Murphy* for two reasons:

> [First,] insofar as the court's reasoning is a matter of contract interpretation, it means that when the parties used the phrase "the law of your state," they meant "federal law plus (nonfederal) state law." *Murphy* provides no basis for concluding that the parties intended to use the phrase "the law of your state" in such a way, and we are aware of none. . . . [Second,] insofar as the court reasoned that contract interpretation is irrelevant because the parties are powerless to opt out of the FAA by contract, we are aware of no authority for the court's position.

*Id.*

As H&R Block correctly points out, these criticisms of *Murphy* fail to respond to its central point that state rules found to be preempted by the FAA never were "state law." *Murphy*, 724 F.3d at 1226. With respect to the first criticism, the *Murphy* court provided a basis for concluding that the parties did not intend for state law to govern the enforceability of the arbitration clause if the state law contravened federal law. It explained that federal law is part of the law of every state "as much as [every state's] own local laws and Constitution." *Id.* (internal quotation marks omitted). Thus, the court found it "nonsensical" that by agreeing that the "law of their state" would govern the agreement, the parties intended to mean "the law of their state without considering federal law." *Id.*

With respect to the second criticism, contrary to the *Imburgia* court's misapphrension, the *Murphy* court did not "reason[] that contract interpretation is irrelevant because the parties are powerless to opt out of the FAA by contract . . ." *Imburgia*, 170 Cal. Rptr. 3d. at 197. Rather, the court expressly acknowledged that it was "clear that if DirecTV had actually contracted with Plaintiffs to allow class arbitration, it would be required to do so irrespective of *Concepcion*." 724 F.3d at 1228. The parties, however, "did exactly the opposite" by agreeing to a class-action waiver. *Id.*

Moreover, the *Imburgia* court failed to take account of the liberal federal policy favoring arbitration. Under federal policy, "a court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (internal quotation marks omitted). The court must construe the parties' intentions "generously . . . as to issues of arbitrability.'" *Mitsubishi Motors*, 473 U.S. at 626. These principles further support the Ninth Circuit's reasoning in *Murphy*.

9

Neither the *Imburgia* court nor the plaintiffs provides any compelling reason why this court should depart from the Ninth Circuit's holding in *Murphy*. In view of consistent Supreme Court precedent, the court finds the reasoning of *Murphy* persuasive. Under its reasoning, the arbitration clause in this case is enforceable. Accordingly, H&R Block's motion to compel arbitration is granted.

## IV. CONCLUSION

For the foregoing reasons, H&R Block's motion to compel arbitration and stay proceedings is granted. These cases are stayed pending arbitration in accordance with 9 U.S.C. § 3. The clerk is respectfully directed to close this case and all member cases associated with MDL No. 2373.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 23, 2014